646 So.2d 717 (1994)
DEPARTMENT OF REVENUE, et al., Appellants/Cross-Appellees,
v.
David KUHNLEIN, et al., Appellees/Cross-Appellants.
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, et al., Appellants/Cross-Appellees,
v.
Richard ADAMS, et al., Appellees/Cross-Appellants.
Nos. 82994, 82995.
Supreme Court of Florida.
September 29, 1994.
Order Granting One Motion for Clarification but Denying other Motion November 30, 1994.
*719 Robert A. Butterworth, Atty. Gen., and Eric J. Taylor and Harry F. Chiles, Asst. Attys. Gen., Tallahassee, for appellants, cross-appellees.
Christopher K. Kay and Michael J. Beaudine, Foley & Lardner, Orlando, and Kimball R. Anderson, W. Gordon Dobie and Bruce R. Braun, Winston & Strawn, Chicago, IL on behalf of David Kuhnlein, et al.
James K. Green, James K. Green, P.A., West Palm Beach, and Robert W. Smith, Orlando, Cooperating Attys., for American Civ. Liberties Union Foundation of Florida, Inc., on behalf of Richard Adams and Balance Chow.
James M. Ervin, Jr. and John M. Gillies, Holland & Knight, Tallahassee, and Jeffrey S. Sutton, Jones, Day, Reavis & Pogue, Columbus, OH, amicus curiae, for R.R. Donnelly & Sons Co.
KOGAN, Justice.
We have for review a question certified by the Fifth District Court of Appeal to be of great public importance, requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
In 1990, the Florida Legislature passed an act imposing a $295 impact fee on cars purchased or titled in other states that then are registered in Florida by persons having or establishing permanent residency here. As later amended, credit was given to the extent that the registrant paid Florida sales and use taxes, though no credit is given for any out-of-state taxes paid on the same vehicle. The fee is not imposed upon tourists or temporary visitors to Florida, nor upon used cars imported from out-of-state that are sold by Florida dealers.[1]
*720 Two separate groups later filed suit. The first group consisted of a certified class of plaintiffs who sued for declaratory judgment on grounds that the tax violated guarantees of the United States Constitution, including the Commerce Clause. The Florida Department of Revenue ("DOR") and the other State parties contend that several members of the class were legally required to pay the impact fee but have submitted no proof that they actually paid it. The State also argues that none of the class plaintiffs have applied for a refund, which allegedly would trigger circuit court jurisdiction under sections 26.012(2)(e) and 215.26, Florida Statutes (1993). Some of the plaintiffs dispute these claims.
The other group of plaintiffs filed an action arguing that the impact fee violated their civil rights. They sought relief under 42 U.S.C. § 1983. The State contended that Section 1983 was not an appropriate vehicle for challenging a state tax matter.
The trial court consolidated the various cases. The trial court later entered final summary judgment finding section 319.231 unconstitutional under the Commerce Clause of the United States Constitution and ordering an immediate refund. It also ruled that a taxpayer could bring a Section 1983 action in state court in a tax matter. The trial court denied the Civil Rights Plaintiffs' claim that the statute violated the right to travel.
Initially, the State argues that various plaintiffs below lacked standing to pursue this case because they either have not paid the fee or have not requested a refund of any fee paid. We note that the trial court rejected the State's factual contentions with respect to some appellants, and the record adequately supports the judge's findings. We also do not believe there is any requirement that the plaintiff must pay the fee or request a refund, at least in the present case. The fact that these plaintiffs face penalties for failure to pay an allegedly unconstitutional tax is sufficient to create standing under Florida law.
Unlike the federal courts, Florida's circuit courts are tribunals of plenary jurisdiction. Art. V, § 5, Fla. Const. They have authority over any matter not expressly denied them by the constitution or applicable statutes. Accordingly, the doctrine of standing certainly exists in Florida, but not in the rigid sense employed in the federal system. We thus are not persuaded by the federal standing cases cited by the State.
We do agree that, except as otherwise required by the constitution, Florida recognizes a general standing requirement in the sense that every case must involve a real controversy as to the issue or issues presented. See Interlachen Lakes Estates, Inc. v. *721 Brooks, 341 So.2d 993 (Fla. 1976). Put another way, the parties must not be requesting an advisory opinion, id., except in those rare instances in which advisory opinions are authorized by the Constitution. E.g., art. IV, § 1(c), Fla. Const. (advisory opinions to Governor).
In the context of declaratory judgment actions, we have reiterated much the same rule:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.
May v. Holley, 59 So.2d 636, 639 (Fla. 1952), reaffirmed by, Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla. 1991).
The State here argues that the instant case does not meet the May requirements. We disagree. This Court accepted jurisdiction in Martinez (relying on May) to resolve a dispute between various groups and the Governor over the validity of workers' compensation laws, even though the case arguably came close to being a request for an advisory opinion. Id. at 1170-71. It is true that no party disputed standing there, but this Court still refused to decline jurisdiction sua sponte, because of the importance of the issue. Id. at 1171.
We find that the present case does involve an actual controversy that is directly affecting, or can directly affect, the lives of many Florida residents. This is so because the law in question here requires certain residents either to pay an allegedly illegal tax or risk being penalized by the State. In sum, the controversy here is certainly greater than the one that existed in Martinez. Accordingly, standing existed for the plaintiffs below to bring this action for declaratory judgment.
The State next argues that the cause below was barred by the state's sovereign immunity, by an alleged common law rule that no one is entitled to the refund of an illegal tax, and by the requirements of Florida's refund statutes. Even if true, these are not proper reasons to bar a claim based on constitutional concerns. Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will. Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions.
We also are unpersuaded by the State's claim that a refund claim cannot be cast as a class action. Any constitutional claim affecting a class of persons can be the proper subject of a class action, provided other procedural requirements are met, as they were here.
On the merits, we first address the Commerce Clause issue. The United States Constitution provides that "Congress shall have Power ... To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8. Justice Clarence Thomas recently explained how the Commerce Clause acts as a restriction on certain kinds of state actions:
Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a "negative" aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.
*722 Oregon Waste Systems, Inc. v. Department of Environmental Quality, ___ U.S. ___, ___, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994). In deciding whether the Clause has been violated, the reviewing court first must determine whether the state action regulates even-handedly or imposes actual discrimination against interstate commerce. Id. "Discrimination" in this context means
differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.
Id. at ___, 114 S.Ct. at 1350. Discrimination exists when a state law taxes a transaction more heavily when it crosses state lines than when it occurs entirely within the state. Id.
If actual discrimination is present, the state action is "virtually per se invalid." Id. The State in question can defeat the presumption of invalidity only by showing that the statute advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means. Id. at ___, 114 S.Ct. at 1351.
On the question of discrimination, the class plaintiffs rely in part on the effect the impact fee will have on interstate commerce in used automobiles. They have argued that the impact fee will be applied to used vehicles purchased and titled out-of-state and then brought into Florida, but will not apply to used cars already titled in Florida and sold here. Accordingly, class plaintiffs argue that in-state dealers in used cars automatically will have a $295 advantage over similar out-of-state dealers.
We believe, as the State urges, that we cannot examine this argument apart from the overall vehicle taxing scheme adopted by Florida, which is more complex than what may first appear. As the State has noted, the overall tax impact consists of the interlocking effect of Florida and out-of-state sales taxes, the Florida use tax, and the Florida impact fee. We agree with the State that this taxing system itself, not any single part, must be examined by this Court. The United States Supreme Court itself has warned that reviewing courts must consider actual effects, not isolated technicalities. American Trucking Assocs., Inc. v. Scheiner, 483 U.S. 266, 295, 107 S.Ct. 2829, 2846, 97 L.Ed.2d 226 (1987).
Other than fuel taxes and certain fees not at issue here, the primary tax upon vehicles in Florida is the sales tax, which is assessed against all vehicles sold in this state. The sales tax in turn is supplemented by a use tax assessed against certain out-of-state purchases of goods that are brought into Florida for use here. Vehicles are included.[2] § 212.06, Fla. Stat. (1991). The overall purpose of the use tax is to recoup sales tax revenues the state otherwise would lose when goods purchased out-of-state are brought into Florida for use here. However, use taxes involve two special problems of a constitutional dimension, which states like Florida have attempted to resolve through use-tax exemptions.
The first of these problems is in determining when an out-of-state transaction actually was not motivated by a desire to bring an item of personal property into Florida for use here. The legislature has resolved this issue by a simple bright-line test: The use tax is presumptively inapplicable to tangible personal property purchased and used for at least six months in another jurisdiction of the United States. § 212.06(8)(a), Fla. Stat. (1991). Administrative rules promulgated by DOR further refine the test:
There shall be a presumption that any ... motor vehicle, or other vehicle purchased in another state, territory of the United States, or the District of Columbia but titled, registered, or licensed in this state is taxable [subject to some exceptions not relevant here]. This presumption may be rebutted only by documentary evidence *723 that the person owning the ... motor vehicle purchased the ... motor vehicle in another state, territory of the United States, or the District of Columbia six (6) months or more prior to the time it is brought into this state.
Fla. Admin. Code, R. 12A-1.007(2)(a). The rules go on to require that owners present proof that the vehicle lawfully was subject to the taxing authority of the other jurisdiction and that the tax on the vehicle was paid to that jurisdiction.[3]Id.
The second problem in use taxes is how to avoid the double taxation that otherwise might occur if two or more states are taxing the same vehicle. There is a potential constitutional pitfall here, based on the possibility that double taxation itself could be a serious disincentive to free trade among the states. In Williams v. Vermont, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985), the Court expressly reserved judgment on whether the United States Constitution requires the states to credit out-of-state sales tax payments against an in-state use tax levied on the same item of personal property. Id. at 21-22, 105 S.Ct. at 2471. Thus, the vast majority of American jurisdictions presently give such a credit, id., apparently heeding the warning flag raised by the nation's high Court.
Florida is among them, at least with regard to its use tax. Florida law provides that, once the use tax is applicable, credit must be given for any "like tax" paid to another American jurisdiction that is equal to or greater than Florida's tax. If the out-of-state tax was less, then the out-of-state dealer is held responsible for paying the difference to Florida. § 212.06(7), Fla. Stat. (1991). DOR administrative rules require the owner to present documentary evidence that the tax was paid. Fla. Admin. Code R. 12A-1.007(3)(a).
Of course, the problem immediately arises whether the $295 impact fee permits any credit for out-of-state taxes paid on a vehicle. It is true that subsection 319.231(4) expressly provides that the impact fee must be reduced by an amount equal to any sales or use tax paid to Florida. However, because of the way the legislature chose to structure its overall tax scheme, there never can be any actual transfer of credit through this statutory cross-reference. This is because the Florida use tax itself is reduced by the out-of-state tax, and any overage thus is purely a Florida tax. The impact fee, in turn, would be reduced by the overage, but this gives no credit for the out-of-state tax  only for any remaining Florida tax.
Thus, we can examine the impact of this taxing scheme through a hypothetical. Assume that a Florida resident purchased a used car titled in another state for $5,000 subject to an out-of-state 6 percent sales tax, and the applicable sales and use tax in Florida also is 6 percent. The tax paid to the other state would be $300, which would be equal to the Florida use tax. If the vehicle were immediately titled in Florida, no use tax would be assessed because the owner would be entitled to a 100 percent credit based on these facts. Because no Florida use tax is assessed, the vehicle owner would not be entitled to any credit against the $295 impact fee. Thus, the overall tax would equal $300 paid to the other state plus $295 paid to Florida  a total of $595.
Now assume that the same $5,000 used car were purchased in Florida from a Florida dealer. In that situation, the purchaser would pay the 6 percent sales tax, or $300. There would be no $295 impact fee because the vehicle either was previously titled in Florida or is being sold by a Florida dealer. § 319.231(2)(c), Fla. Stat. (1991). Thus, the total tax is only $300 for sale of the same automobile entirely within Florida.
A further examination of the mathematics of this taxing scheme shows the circumstances in which the $295 impact fee would be offset by the Florida use tax. So long as the Florida use tax and the out-of-state sales taxes are nearly the same, there would be little if any offset. This would be true no *724 matter how expensive or inexpensive the used car might be. Offset would increase only to the extent that the out-of-state sales tax or any similar tax is very much less than the Florida use tax, or to the extent that an expensive vehicle's sale price exaggerates the dollar difference between the Florida and out-of-state taxes. In other words, more expensive vehicles are more likely to escape the $295 impact fee.
In our hypothetical of the $5,000 used car, the use tax would offset the $295 impact fee only if the out-of-state sales tax and other similar taxes were at or near zero. For example, a zero percent out-of-state tax would mean that Florida would assess a $300 use tax against our hypothetical $5,000 used automobile, fully offsetting the $295 impact fee and resulting in a total tax of just $300.[4] However, if the sale price were $30,000, only a one-percent difference between the Florida and out-of-state taxes would mean that the $295 impact fee would be entirely offset.[5]
We are mindful of the State's argument that every vehicle titled in Florida by some point in time will pay at least $295 in taxes or impact fees to Florida. Certainly this will be true in the vast majority of cases,[6] but that fact in itself does not dispose of the Commerce Clause problem. The Commerce Clause is not concerned with the overall history of taxes paid to a state during the life of a vehicle; rather, the Commerce Clause looks to the question of "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste, ___ U.S. at ___, 114 S.Ct. at 1350.
Here, there can be no question but that a burden is placed on some out-of-state economic interests. Specifically, Florida has erected a financial barrier that gives Florida used-car sellers a substantial advantage over similar out-of-state sellers. In our hypothetical of the $5,000 used car, an out-of-state sale to a Florida resident would result in a total tax approximately 200 percent of what would be paid for the same transaction conducted entirely within Florida. This situation unquestionably favors in-state interests over out-of-state interests.
We also believe that the impact fee scheme fails under the United States Supreme Court's "internal consistency" test. Under this test,
["]the tax must be such that, if applied by every jurisdiction," there would be no impermissible interference with free trade [among the states].
Armco, Inc. v. Hardesty, 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540 (1984) (quoting Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983)); accord American Trucking Assocs., Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). There can be no doubt that the impact fee does in fact violate this test. For example, if Georgia and Alabama adopted Florida's impact fee, persons in those states would be deterred from coming to Florida to buy used vehicles. A similar impact fee throughout the United States clearly would tend to favor in-state commercial interests over out-of-state concerns, thus directly impinging upon the free-trade zone among the states created by the Commerce Clause.
Accordingly, we conclude that the Florida impact fee does in fact result in discrimination against out-of-state economic interests in contravention of the Commerce Clause. Oregon Waste. To be constitutionally permissible, the impact fee thus must be capable of surviving the "virtually per se invalid" test. This means the State must *725 show that the statute advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means. Id. As the United States Supreme Court has explained:
Our cases require that justifications for discriminatory restrictions on commerce pass the "strictest scrutiny." The State's burden of justification is so heavy that "facial discrimination by itself may be a fatal defect."
Id. at ___, 114 S.Ct. at 1351 (quoting Hughes v. Oklahoma, 441 U.S. 322, 337, 99 S.Ct. 1727, 1737, 60 L.Ed.2d 250 (1979)).
On this question, we first address the contention that this Court might eliminate any "fatal defect" by declaring unconstitutional and then severing the impact-fee exemption granted to Florida dealers. § 319.231(2)(c), Fla. Stat. (1991). We find that this will not eliminate the entire problem, and in fact would exacerbate still other problems of a constitutional dimension. Foremost, differential treatment still would remain with respect to used vehicles sold by nondealers. Thus, a private individual selling an older car would continue to have an advantage over out-of-state dealers or out-of-state individuals selling much the same car. We therefore find that there is no way to sever any portion of the statute to eliminate applicability of the "virtually per se invalid" test.
There are two elements the State must establish under the test: (a) that the statute advances a legitimate local purpose, and (b) that the purpose cannot be adequately served by reasonable nondiscriminatory means. We assume for present purposes, without deciding, that the State has advanced a legitimate local purpose in this case: the need to obtain adequate road-maintenance and construction revenues from those who use the roads. As the Oregon Waste Court noted,
"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden[s]." Nevertheless, one of the central purposes of the Clause was to prevent States from "exacting more than a just share" from interstate commerce.
Oregon Waste, ___ U.S. at ___, 114 S.Ct. at 1351 (citing Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823 (1938)).
However, there obviously are less discriminatory methods for Florida to recoup the cost of road construction and maintenance. As one of only many examples, an increase in the fuel tax would be far fairer, because fuel consumption has a direct relationship to the wear-and-tear a vehicle (whether titled in Florida or not) inflicts on state road systems. Likewise, Florida could impose a mileage tax or could impose the $295 impact fee on all vehicles titled in Florida, regardless of any previous title history.
Moreover, there is no rational reason why the legislature chose a tax as regressive as this one, in light of the purpose announced by the State. Nothing here suggests that more expensive vehicles somehow cause less wear-and-tear on Florida's roads. Yet, the way this tax is structured, expensive vehicles are more likely to wholly avoid paying the $295 impact fee. The least expensive vehicles, meanwhile, are more likely to bear the full brunt of the fee. This is an irrational distinction with no genuine bearing on the State's objective here.
We find that Florida is in fact exacting more than a just share against interstate interests here, because there is at best only a tenuous relationship between the State's objective and the means chosen to raise revenues.
Because the statute must be declared facially unconstitutional, we need not and will not address the other issues raised by the parties. We note the procedural issues the State has raised with respect to the civil rights plaintiffs. However, even assuming that Section 1983 was an inappropriate means of suing in this instance, those parties that chose this method still are entitled to have their petitions treated as a request for a proper remedy. Art. V, § 2(a), Fla. Const. At a minimum, we would be required to treat all of the petitions filed below as requests for relief by way of declaratory judgment. Relief accordingly will be granted to all on that basis.
*726 Finally, the State has argued that it should be entitled to develop some form of retroactive remedy under McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). This presumably would be a retroactive tax against all Florida vehicle titles not previously subject to the impact fee.
We find that the trial court below gave due consideration to this possibility and was within its discretion in rejecting the State's proposal. While the trial court gave several reasons, we find one sufficient in itself: There would be grave difficulty in assessing a retroactive tax. The record below indicates that the Florida Department of Highway Safety & Motor Vehicle would be unable to collect the tax from a very substantial percentage of title holders, whose addresses cannot be kept current. The Department further has averred that it lacks the resources necessary to track down these title holders.
As the trial court below noted, the impact fee was void from its inception because the legislature acted wholly outside its constitutional powers. The only clear and certain remedy is a full refund to all who have paid this illegal tax. The result reached by the trial court and its refund order therefore are approved. We need not and therefore do not address the equal protection arguments raised by the parties, since the statute must be stricken for the Commerce Clause violation.
It is so ordered.
GRIMES, C.J., OVERTON and HARDING, JJ., and McDONALD, Senior Justice, concur.
SHAW, J., concurs in result only.

ORDERS ON MOTIONS
Appellees/Cross-Appellants Adams and Crows' Motion for Rehearing or Clarification as to Case No. 82,995 is hereby denied.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., dissents.
Appellants/Cross-Appellees Department of Revenue, et al.'s Motion to Strike That Part of Appellees' Reply Brief Not In Accordance With the Florida Rules of Appellate Procedure and This Court's Order of January 12, 1994, is hereby denied.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
Appellees/Cross-Appellants David Kuhnlein, et al.'s Motion to Remand Pursuant to Appellate Rule 9.600(b), or in the Alternative to Stay Defendants From Sending Class Notice Without Court Approval, and supplement thereto, is hereby denied.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
Appellees/Cross-Appellants Adams and Chow's Motion for Attorneys Fees is hereby denied.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., dissents.
The Florida Legislature moves for leave to appear in this case as amicus curiae solely for the purpose of asking for a clarification of our opinion with regard to the fiscal prerogatives of the legislative branch. The motion is granted, and we readopt and clarify our opinion as follows.
We agree with the Legislature that it has authority to fashion a retroactive remedy under McKesson with respect to taxes declared illegal under the Commerce Clause. As McKesson notes, that remedy need not be perfect. In the present case, however, any conceivable retroactive remedy the Legislature might fashion necessarily would be so highly imperfect and involve such delays as to result in fundamental injustice. Accordingly, we believe the trial court was within its discretion in ordering a refund based on the facts at hand.
*727 We do not imply, however, that the courts of this state can order refunds in any or even most cases of this type. The facts of the present case are unusual because the number of individuals not subject to the illegal tax is enormous, the ability of the state to locate a very substantial percentage of them is unlikely, and the delays that inevitably would result from the effort of locating them would be grossly unfair to all involved  most especially those who paid the tax. This situation is substantially different from the facts of McKesson.
In so saying we strongly emphasize that the courts should show great deference to the legislative prerogative. If there is any reasonable way that prerogative may be honored without substantial injustice to the taxpayers of this state, then a court reviewing a tax case of this type should give the Legislature the opportunity to fashion a retroactive remedy within a reasonable period of time. As a general rule, a "reasonable period of time" means by the end of the next regular legislative session plus the period of time in which the Governor must review bills approved by both houses.
We also note that the Legislature in its motion has represented to this Court that it will not attempt to fashion a retroactive remedy even if given leave to do so. This is a fact that factors in our decision on clarification, if only because it tacitly acknowledges our conclusions as to this case. We do believe, however, that it would be of great benefit to the courts if the Legislature sought leave to intervene at the trial level in Commerce Clause cases of this type to address the question of a retroactive remedy. When such leave is sought, a trial court clearly would abuse its discretion by denying leave to intervene. Then the record on appeal would contain a full account of the Legislature's views as to a retroactive remedy.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The statute provides:

(1) An impact fee of $295 is imposed on each original certificate of title issued for a motor vehicle previously titled outside of this state. The fee, which shall be deposited into the General Revenue Fund, shall not be refundable unless it is paid in error.
(2) The fee imposed by subsection (1) shall not apply to:
(a) Service-providing vehicles of those not-for-profit organizations which qualify for an exemption with respect to the purchase of a motor vehicle or mobile home under the provisions of s. 212.08.
(b) The title application for any motor vehicle owned by and operated exclusively for the personal use of:
1. Any member of the United States Armed Forces, or his spouse or dependent child, who is not a resident of this state and who is stationed in this state while in compliance with military orders.
2. Any former member of the United States Armed Forces, or his spouse or dependent child, who purchased such motor vehicle while stationed outside of Florida or who purchased the vehicle prior to departing the state, who has separated from the Armed Forces and was not dishonorably discharged or discharged for bad conduct, who was a resident of this state at the time of enlistment and at the time of discharge, and who applies for registration of such motor vehicle within 6 months after discharge.
3. Any member of the United States Armed Forces, or his spouse or dependent child, who was a resident of this state at the time of enlistment, who purchased such motor vehicle while stationed outside of Florida or who purchased the vehicle prior to departing the state, and who is now reassigned by military order to this state.
4. Any spouse or dependent child of a member of the United States Armed Forces who loses his life while on active duty or who is listed by the Armed Forces as "missing-inaction." Such spouse or child must be a resident of this state and the serviceman must have been a resident of this state at the time of enlistment. Registration of such motor vehicle must occur within 1 year of the notification of the serviceman's death or of his status as "missing-in-action."
(c) Title applications where a reassignment is being made by a licensed Florida motor vehicle dealer.
(d) The titling of any motor vehicle owned or exclusively operated by the state or by any county, municipality, or other governmental entity.
(e) The titling of a truck defined in s. 320.08(3)(d).
(f) The titling of any motor vehicle 25 model years old or older.
(g) The titling of a motor vehicle owned by any organization or person exempt under the provisions of s. 320.0655(2), s. 320.084(1), s. 320.0841, s. 320.0842(1), s. 320.089(2), s. 320.0893, or s. 320.10.
(h) Persons applying for temporary registration plates pursuant to s. 320.1325, unless permanent registration is applied for.
(3) The fee imposed by subsection (1) shall also be imposed on vehicles processed using the "registration-only" procedure, and payment of such fee shall be identified and retained in the motor vehicle registration records. However, the exemptions listed in subsection (2) shall also apply.
(4) Credit shall be applied towards the fee imposed by subsections (1) and (3) for any documented sales or use tax paid to this state at the time of sale, or any use tax paid to this state, if the title or registration-only application is made within 6 months of the date of purchase of the motor vehicle.
§ 319.231, Fla. Stat. (1991).
[2] Nothing in the statute or administrative rules treat sales of used cars any differently than new cars. See Fla. Admin. Code R. 12A-1.007(2)(a) (use tax is inapplicable only if "the person owning the ... motor vehicle purchased the ... motor vehicle in another state, territory of the United States, or the District of Columbia six (6) months or more prior to the time it is brought into this state."). That being the case, the use tax itself applies to used vehicles purchased out of state for use in Florida, provided the other relevant conditions are met, no matter how long the used vehicle may have been used in another state by its prior owners.
[3] Credit is not allowed for taxes paid to a foreign nation. Fla. Admin. Code R. 12A-1.007(3)(b). Obviously, the Commerce Clause does not extend its free-trade guarantee to jurisdictions outside the United States, so the state does not infringe the Constitution by giving no credit for taxes paid to other nations.
[4] One other noteworthy feature of the impact fee is its highly regressive nature. Because it is set at a flat $295, it effectively imposes an increasingly higher tax as a percentage of total sale price as the price drops. There thus would be some situations in which the total out-of-state and Florida taxes on the vehicle would exceed its sale price.
[5] Suppose the Florida use tax is six percent and the similar out-of-state tax is only five percent. The out-of-state tax thus would be $1,500, and Florida would collect a $300 use tax to offset the lower out-of-state tax. Thus, the $295 impact fee would be entirely offset.
[6] It might not be true of some very low priced used vehicles brought into Florida for the first time and sold by a Florida dealer.