SHEPHERD, J.,
specially concurring.
I concur in the decision announced by the majority. Even setting aside the knotty, but judicially important and legally technical question concerning whether PD-ll’s twenty-one filed “Motion[s] to Appoint Other Counsel in Unappointed Non-capital Felony Cases,” create a “case or controversy” under Florida law, see Dep’t of Revenue v. Kuhnlein, 646 So.2d 717, 720 (Fla.1994) (noting “every case must involve a real controversy as to the issue or issues presented”),[10] this action is nothing more than a political question masquerading as a lawsuit, and should be dispatched on that basis.
Twelve years ago, in a case in which an assemblage of public school parents, students, and education providers sought to prosecute a complaint alleging the state was failing in its obligation to allocate adequate resources to the public school system as mandated by the people of the state in Article IX, section 1, of the Florida Constitution (1996),[11] our supreme court announced six criteria by which to gauge whether a case involves a political question, namely does there exist:
(1) a textually demonstrable commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3)[an] impossibility of deciding [the question] without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court’s undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; and lastly (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
Coal, for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles, 680 So.2d 400, 408 (Fla.1996) (citing Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Employing these criteria, the Court ap *807 proved the decision of the trial court that adjudication of the parents’ and education providers’ claims for relief was beyond its power. Coal., 680 So.2d at 408 (“[Appellants have failed to demonstrate in their allegations, or in their arguments on appeal, an appropriate standard for determining ‘adequacy1 that would not present a substantial risk of judicial intrusion into the powers and responsibilities assigned to the legislature, both generally (in determining appropriations) and specifically (in providing by law for an adequate and uniform system of education).”).
Applying these same criteria to the case at bar, our ease likewise fails to present a justiciable issue. As in Coalition, the gravamen of PD-ll’s complaint in this case is inadequate funding. Id. As was the case in Coalition, there exists in the Florida Constitution a “textually demonstrable commitment” of the issue before us to a “coordinate political department,” in this case the Florida legislature. Id.; see Art. VII, § 1(c), Fla. Const. (“No money shall be drawn from the treasury except in pursuance of appropriation made by law.”); Chiles v. Children A, B, C, D, E & F, 589 So.2d 260, 264 (Fla.1991) (holding the power to appropriate is legislative). It is not for us to intrude upon those powers. See Art. II, § 3, Fla. Const. (“No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.”). Nor, as the majority well explains, is there any judicially discoverable and manageable standard to establish what is an “excessive caseload.” As presented, this case cannot be adjudicated absent policy determinations of a kind clearly for nonjudicial discretion.
I empathize -with PD-ll’s argument that its attorneys are overworked and under-resourced. Such appears to be the natural condition of the public servants who serve clients before the judicial branch of this state. Absent individual proof of constitutional injury to those clients, however, empathy or lack thereof is for the legislature.
On these premises, I join the judgment of the Court.

. Remember, not a single client of PD-11 has objected to the representation being received by him or her on anything close to the grounds being urged by PD-11 to shift representation outside its offices. The parties to this proceeding — all governmental in nature— have had little to say about the procedural aspects of this case.

. At the time, Article IX, section 1 read:
Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation'of institutions of higher learning and other public education programs that the needs of the people may require.
There have been several revisions and additions made to Article IX, section 1 since that time. Compare id. with Art. IX, § 1, Fla. Const. (2003); Art. IX, § 1, Fla. Const. (1999).