SHEPHERD, J.
This is an appeal from an order denying a motion to vacate a final default judgment entered against Charles Brady, a defendant in a third-party claim arising from an abortive real estate transaction. Brady contends the order was facilitated and entered on motion of the plaintiff in the main case, who had not sued Brady, and over the objection of all parties to the third-party action.[1] In the alternative, Brady, joined again by all parties to the third- *1207 party action, seeks to vacate the final default judgment because it was prepared and secured by counsel without providing a courtesy copy of the proposed final judgment to each party and then, puzzlingly, not received by any party except the plaintiff, after it was entered by the trial judge. Finding the first assertion of error sufficient, we reverse and remand this case for further proceedings on this ground alone.
The real estate transaction, which resulted in both this civil action and a related criminal action, was concocted by Brady, a non-lawyer who was working out of the Law Office of James Eddy and Associates, P.A. Eddy is Brady’s stepfather. Among Eddy’s real estate clients were P3 Group, LLC and Hypower, Inc. At the time of the perfidies in this case,' Bernard Paul-Hus was the managing member of P3 Group and president of Hypower.
In October 2006, Brady approached Paul-Hus with an urgent opportunity to purchase a five-acre tract of vacant commercial land in Pompano Beach, Florida, from Lord Corporation for $16.50 per square foot and re-sell it immediately to Morrow Equipment Company, LLC for $19.00 per square foot. Paul-Hus hastily signed a proposed contract, prepared by Brady on forms used by the Eddy law firm, to purchase the property from Lord Corporation in the name of P3 Group. Within a day, Brady reported back to Paul-Hus that Lord Corporation had signed the contract. Despite multiple requests, however, Paul-Hus never was able to obtain a fully executed copy of the agreement from Brady.
Unbeknownst to Paul-Hus, Brady’s representations were false. Lord Corporation never signed the contract. In fact, Lord Corporation already had a contract for purchase of the property from CFMT of FL, LLC, a company affiliated with or represented by Michael W. Skop, who was Brady’s acquaintance and attorney. Nor was there any purchase commitment from Morrow Equipment at any price.
Apparently believing he ultimately could sustain his ruse to a successful conclusion,[2] Brady arranged for an Agreement and Assignment of CMFT’s interest as purchaser in the Lord Corporation/CFMT contract to P3 Group for $800,990. Having hung himself on his own petard by inducing Paul-Hus to believe he had a direct contract with Lord Corporation, Brady then persuaded Eddy, whether guilelessly or not, to execute the assignment on behalf of P3 Group, as assignee, and Hypower, as guarantor, in the capacity of “general counsel” to the two corporations.[3] In the meanwhile, Brady was able to use his obviously considerable persuasive powers to con Paul-Hus into depositing $560,112.50 toward the purchase into Skop’s trust account. Needless to say, the fraud eventually was outed, and Paul-Hus refused to close. Brady earned thirty months in state prison for his trouble.[4]
While Brady was imprisoned, Skop filed a complaint against P3 Group and Hypower contending he was the intended beneficiary, under a joint venture agreement with CFMT, of the remaining monies al *1208 legedly owed on the Agreement and Assignment. P3 Group and Hypower responded by counterclaim against Skop, and a third-party complaint against CFMT and Lord Corporation, alleging the Agreement and Assignment was void as executed without authority or, in the alternative, for rescission of the purported agreement, return of the monies paid into the Skop trust account, and damages. P3 Group and Hy-power subsequently added Brady, Eddy, and Eddy’s law firm as additional third-party defendants, seeking damages for breach of fiduciary duty, legal malpractice, and unjust enrichment.
Although Brady was served with the third-party complaint, he did not file an answer, and was defaulted by the court. More than one year after entry of the default, Skop, probably in the misguided belief a judgment in favor of P3Group and Hypower against Brady would provide him some tactical advantage in his defense of the counterclaim, moved for entry of a final default judgment against Brady for the $560,112.50 deposit, together with prejudgment interest and costs. Skop moved for this judgment despite the facts he had not sued Brady, the claims against Brady were unliquidated, and all third parties, including P3 Group and Hypower, opposed its entry. After a non-evidentiary hearing, the trial court entered the final default judgment in the sum of $696,945.78, inclusive of pre-judgment interest and costs. Finding merit in Brady’s assertions on this appeal, we vacate this judgment and remand the case for further proceedings consistent with this opinion.[5]
DISCUSSION
The substantial question in this case is whether in a multiple-claim lawsuit a party to one of the claims, who is not a party to the other, may prosecute the latter claim to final judgment. We find no indication in the Florida Rules of Civil Procedure that either the drafters of the rules or the Florida Supreme Court ever contemplated that in a multiple-claim lawsuit a party to a claim would seek to prosecute a claim to which he was not a party. Nor have we found any reported instance of such a maneuver in the case law of this state. The briefs of the parties similarly provide no assistance.
Nevertheless, it appears the Rules contemplate that each claim in a multi-claim lawsuit is and should be considered a separately commenced action, albeit prosecuted for convenience in a single action. This conclusion is inferable from the language of Florida Rule of Civil Procedure 1.100 which reads:
Rule 1.100. Pleadings and Motions
(a) Pleadings. There shall be a complaint or, when so designated by a statute or rule, a petition, and an answer to it; an answer to a counterclaim denominated as such; an answer to a crossclaim if the answer contains a crossclaim; a third-party complaint if a person who was not an original party is summoned as a third-party defendant; and a third-party answer if a third-party complaint is served. If an answer or third-party answer contains an affirmative defense and the opposing party seeks to avoid it, the opposing party shall file a reply containing the avoidance. No other pleadings shall be allowed.
(emphasis added). The rule first appeared in this form in the Florida Rules of Civil *1209 Procedure as Rule 1.7(a), effective January 1, 1966. See In re Fla. Rules of Civil Procedure 1965 Revision, 178 So.2d 15, 18-19 (Fla.1965).[6] Before that date, counterclaims and crossclaims were well recognized in Florida practice under then Florida Rule of Civil Procedure 1.13(8),[7] but separate causes of action against third-party defendants were not.[8] See Fla. Fuel Oil, Inc. v. Springs Villas, Inc., 95 So.2d 581, 588 (Fla.1957); Schmid v. Saphier, 184 So.2d 908 (Fla. 4th DCA 1966); Pan Am. Surety Co. v. Jefferson Constr. Co., 99 So.2d 726 (Fla. 3d DCA 1958); City of Boca Raton v. Sharp, 107 So.2d 271 (Fla. 2d DCA 1958); see generally, Dennis J. McGillicuddy, Note, Third-Party Practice, 18 U. Fla. L. R. 94 (1965). Thus, it is quite clear a third-party claim is a separate and distinct action from the claims brought in the main action.
More importantly, perhaps, Skop lacks standing to prosecute the action against Brady in this case. Except as otherwise required by its constitution,[9] Florida recognizes a general standing requirement in the sense that every case must involve a real controversy as to the issue or issues presented. Dep’t of Revenue v. Kuhnlein, 646 So.2d 717, 720-21 (Fla.1994). The requirement stems from this state’s judicially pronounced “case or controversy” rule.[10] Although the doctrine of standing is not employed with the rigidity found in federal practice, id. at 720, it does encompass the important require *1210 ment the claim be brought by or on behalf of one who is recognized in law as a “real party in interest,” that is, “the person in whom rests, by substantive law, the claim sought to be enforced.” Author’s cmt. to Fla. R. Civ. P. 1.210; see also 30 Fla. Stat. 304, 306-07; 3A J. Moore, Moore’s Federal Practice, § 17.02 (3d ed. 2006); see also Weiss v. Johansen, 898 So.2d 1009, 1011 (Fla. 4th DCA 2005).
Applying these principles, it quickly becomes clear that the substantive claim alleged in the third-party complaint in this case does not rest in Skop. Skop sued only P3 Group and Hypower on a third-party beneficiary contract theory. In contrast, the third-party claims of P3 Group and Hypower against Brady are “liability over” claims on three different theories— breach of fiduciary duty, legal malpractice, and unjust enrichment — for any damages they might be held liable for to Skop, and other damages allegedly incurred as a result of Brady’s misfeasance. These claims are none of Skop’s business. See Singleton v. Wulff, 428 U.S. 106, 116, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).
For these reasons alone, we reverse the order denying Brady’s motion to vacate the final default judgment and remand this case for further proceedings in compliance with this opinion.
ROTHENBERG, J., concurs in result only.

. This case has been the subject of one prior appeal to this court, which resulted in a dismissal for lack of jurisdiction. See Skop v. P3 Group, L.L.C., 67 So.3d 1194 (Fla. 3d DCA 2011).

. Brady's incentive to consummate a transaction was Paul-Hus' promise to him of thirty percent of the profit P3 Group was to make on the re-sale.

. Although not especially relevant to our discussion here, it appears from the record that as a result of an objection or request by Skop, Brady subsequently forged Paul-Hus’ signature on a separate copy of the assignment.

.He now is serving two years of community control followed by eighteen years of probation, terminable upon repayment of all restitution and costs assessed in this and several similar cases.

. We pause to commend P3 Group and Hy-power for conceding the default should be vacated even though probably not in their best interest.

. Prior to January 1, 1966, Rule 1.7(a) read: Rule 1.7. Pleadings; Motions
(a) Pleadings. There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim. No additional pleadings, other than motions provided by these rules shall be allowed, except that the court may order a reply to an answer.
1954 Rules of Civil Procedure, Rule 1.7(a) (1965); 3 Fla. Stat. 3582 (1961). The rule had existed in substantially the same form since the adoption of the Florida Rules of Civil Procedure in 1954. See 1954 Rules of Civil Procedure, 2 Fla. Stat. 3, 30 (1953).

. This rule, taken nearly verbatim from Federal Rule of Civil Procedure 13(h) as it then existed, read:
When the presence of parties other than those to the original action is required for the granting of complete relief in the determination of a counterclaim or cross-claim, the court shall order them to be brought in as defendants if jurisdiction of them can be obtained, and their joinder will not deprive the court of jurisdiction of the action.
1954 Rules of Civil Procedure, Rule 13(8) (1965); 3 Fla. Stat. 3582 (1961) (emphasis added). This rule has existed in this form since adoption of the Rules of Civil Procedure, see 1954 Florida Rules of Civil Procedure, § 1.13(8), 2 Fla. Stat. 3 (1953), and remains unchanged in the Rules to this date. See Fla. R. Civ. P. 1.170(h) (2011).

. Third-party practice first was recognized by Rule 1.7(a) effective January 1, 1966. In re Fla. Rules of Civil Procedure 1965 Revision, 178 So.2d at 18-19. At the same time, the Florida Supreme Court separately imported the federal third-party practice rule, Federal Rule of Civil Procedure 14, verbatim as Florida Rule of Civil Procedure 1.41, except providing for twenty days instead of ten days to file the third-party complaint without court approval.

. The exceptions are the authority in the Florida Constitution for the Florida Supreme Court to render (or itself seek) an advisory opinion in four explicitly defined circumstances. See Art. Ill, § 16(c), Fla. Const, (legislative apportionment); Art. IV, § 1(c), Fla. Const, (the Governor’s executive powers and duties and petitions); Art. IV, § 10, Fla. Const, (initiative petitions); Art. V, § 2(a), Fla. Const, (submission of questions related to military law to the federal Court of Appeals for the Armed Forces).

. Unlike the express statement of the requirement found in the United States Constitution, see U.S. Const, art. Ill, § 2, the Florida Constitution does not contain an express "case or controversy" rule.