DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES LUCAS SOUTHAM,**
individually, and on behalf of other similarly situated individuals,
Appellant,

v.

**RED WING SHOE COMPANY, INC.,**
a Minnesota corporation,
Appellee.

No. 4D21-3338

[July 13, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Lopane, Judge; L.T. Case No. 062019CA022281AXXXCE.

Keith J. Keogh of Keogh Law, LTD, Chicago, Illinois, Scott D. Owens of Scott D. Owens, P.A., Hollywood, and Bret L. Lusskin of Bret L. Lusskin, P.A., Golden Beach, for appellant.

Jordan S. Kosches of GrayRobinson, P.A., Miami, and David S. Almeida and Mark S. Eisen of Benesch, Friedlander Coplan & Aronoff, LLP, Chicago, Illinois, for appellee.

LEVINE, J.

Appellant, Southam, filed a class action suit alleging that appellee, Red Wing Shoe Company, failed to comply with the requirements of the Fair and Accurate Credit Transactions Act ("FACTA"). Appellant alleged that a receipt he received from Red Wing contained ten digits of his credit card number. Appellant does not allege that his credit card was used, lost, or stolen in any way. Nor was there evidence of any danger of appellant's credit card being used. Appellant suffered no "economic" injury, nor any "distinct or palpable" injury. Thus, in this case, we find "[n]o concrete harm, no standing." *TransUnion LLC V. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Therefore, we find the trial court did not err in granting appellee's motion to dismiss since appellant lacked standing to proceed. We affirm the other issue raised without further comment.

Facts and Procedural History

Following a purchase at a Red Wing shoe store, appellant filed a class action suit in federal court alleging that the receipt provided by Red Wing contained ten digits of his credit card number in violation of FACTA. 15 U.S.C. § 1681c reads as follows:

> (g) Truncation of credit card and debit card numbers
>
> (1) In general
>
> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

Appellant alleged that Red Wing willfully violated FACTA. A willful violation holds the following civil liability:

> (a) In general
>
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 . . . .

15 U.S.C. § 1681n.

The suit did not allege or seek to recover any actual damages. The class members sought only statutory damages under section 1681n.

Red Wing filed a motion to stay the federal court action pending resolution of a matter in front of the Eleventh Circuit. The federal district court granted Red Wing's motion to stay, "pending final resolution of the *Muransky v. Godiva Chocolatier, Inc.* (No. 16-16486) appeal in the Eleventh Circuit." During the stay, appellant filed the action in state court[1], which

---

[1] Actions for FACTA violations under 15 U.S.C. § 1681 are actionable in state courts. "Federal law is enforceable in state courts . . . because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by

Red Wing removed to federal court on the basis of federal question jurisdiction.

The Eleventh Circuit held in *Muransky*, on facts similar to the instant case, that "a party does not have standing to sue when it pleads only the bare violation of a statute." *Muransky v. Godiva Chocolatier, Inc.*, 979 F. 3d 917, 920 (11th Cir. 2020). Thus, the parties agreed to dismiss the federal action and remand the later-filed action to state court. Appellant proceeded in state court on the theory that state standing was plenary and therefore less restrictive than federal standing. Appellant's argument for standing is based solely on the alleged "legal injury" derived from the statutory damages of 15 U.S.C. § 1681n(a)(1)(A).

Red Wing filed a motion to dismiss, alleging that appellant did not have standing to bring the action because he had not suffered a concrete or actual injury. Red Wing argued that "[a]n alleged noncompliant receipt, without more, does not confer standing." (emphasis omitted). Because appellant did not allege that he had suffered any actual damages, and did not allege that his receipt had been stolen, that another copy existed, or that anyone else had seen the receipt, Red Wing believed it was entitled to dismissal.

The trial court granted Red Wing's motion to dismiss, finding that Florida requires a concrete injury to have standing, which appellant did not argue he sustained. The trial court held that alleging a mere statutory violation does not convey standing per se. Rather, "Plaintiff must have a concrete, non-hypothetical injury. Merely obtaining a receipt in alleged violation of FACTA *does not* satisfy this requirement." This appeal follows.

## Legal Analysis

We review de novo the dismissal for lack of standing. *Wilmington Sav. Fund Soc'y, FSB v. Stevens*, 290 So. 3d 115, 117 (Fla. 4th DCA 2020).

## 1. Florida Standing Law

In Florida, judicial authority and the courts emanate from article V, section 1 of the Florida Constitution. Access to the courts is derived from article I, section 21 (1968), which states that "[t]he courts shall be open to

---

the state legislature." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 367 (1990). Thus, "a state court may not close its doors to claims of right finding their source in federal law." *Brown v. Butterworth*, 831 So. 2d 683, 689 (Fla. 4th DCA 2002).

every person for redress of any injury, and justice shall be administered without sale, denial or delay." "Redress" is defined as being "the receiving satisfaction for an injury sustained." Black's Law Dictionary (4th ed. 1968). "[I]njury" is further defined as "[a]ny wrong or damage done to another, either in his person, rights, reputation, or property." Black's Law Dictionary (4th ed. 1968). Consequently, key points can be derived from a plain reading of these Constitutional provisions. Florida courts were conceived and designed to be available for those seeking redress for an injury sustained, whether that injury is enumerated as a wrong or by damages.

Florida courts are generally considered "tribunals of plenary jurisdiction." *Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 720 (Fla. 1994). Whereas federal standing doctrine emanates from Article III of the United States Constitution which "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Still, Florida jurisdiction clearly has limitations. "While 'the Florida Constitution guarantees . . . access to our courts for redress of injuries, [citation omitted] that right has never been understood as a limitless warrant to bring the worlds [sic] litigation here." *Tananta v. Cruise Ships Catering & Servs. Int'l., N.V.,* 909 So. 2d 874, 888 (Fla. 3d DCA 2004) (citation omitted) (alteration in original). Thus, "except as otherwise required by the constitution, Florida recognizes a general standing requirement in the sense that every case must involve a real controversy as to the issue or issues presented." *Kuhnlein*, 646 So. 2d at 720.

The Florida Supreme Court has stated that there are "three requirements that constitute the 'irreducible constitutional minimum' for standing. First, a plaintiff must demonstrate an 'injury in fact,' which is 'concrete,' 'distinct and palpable,' and 'actual or imminent.' Second, a plaintiff must establish 'a causal connection between the injury and the conduct complained of.'" *State v. J.P.*, 907 So. 2d 1101, 1113 n.4 (Fla. 2004) (citations omitted). Finally, "a plaintiff must show 'a "substantial likelihood" that the requested relief will remedy the alleged injury in fact.'" *Id.* (citation omitted).

The Florida Supreme Court's standing analysis in *State v. J.P.* has been cited with approval and utilized in other Florida cases analyzing standing since it was issued. *See Giuffre v. Edwards*, 226 So. 3d 1034, 1039 (Fla. 4th DCA 2017) (quoting the "three minimal requirements for standing" and finding that the plaintiff did not meet the third requirement); *DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1213 (Fla. 1st DCA 2020) (denying standing under *J.P.* where the appellees established none of the three

4

standing elements); *see also Cmty. Power Network Corp. v. JEA*, 327 So. 3d 412, 415 (Fla. 1st DCA 2021) (finding that the plaintiff lacked standing where it did not prove that the defendant's action caused it harm).

Of key importance in the present case is the first prong of the three-part test, that requiring the alleged injury to be "concrete," "distinct and palpable," and "actual or imminent." In the present case, where appellant kept the credit card receipt with the ten digits listed, no actual damages occurred since nothing was alleged to have been charged to appellant's account. Nor was there an imminent possibility of injury, since appellant retained possession of the receipt. A material risk of harm may be sufficient in certain circumstances to meet the concreteness requirement; however, there is no risk of harm at all here as appellant has possessed and retained his receipt. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341-43 (2016).

Appellant alleges that a FACTA violation without resulting harm enables him to sue for statutory damages. However, a purely illegal action in the absence of resulting harm does not confer standing on an individual. Rather, "individuals 'must allege some threatened or actual injury resulting from the putatively illegal action.'" *Olen Props. Corp. v. Moss*, 981 So. 2d 515, 517 (Fla. 4th DCA 2008) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). This court found that the plaintiff in *Olen Properties* had standing because she alleged to have actually been charged an illegal cancellation fee at the conclusion of her lease. *Id.* at 518; *see also Terzis v. Pompano Paint & Body Repair, Inc.*, 127 So. 3d 592, 596 (Fla. 4th DCA 2012) ("Here, the plaintiff alleged an actual injury resulting from the putatively illegal action."). Thus, here, Red Wing's purely illegal action of printing too many digits on appellant's receipt does not confer standing to maintain a suit, because appellant did not "allege some threatened or actual injury resulting from the putatively illegal action." *See Olen Props. Corp.*, 981 So. 2d at 517. Appellant makes neither such allegation; therefore, he cannot bring this suit.

Appellant cites to *Kuhnlein* and *Kaklamanos*, but both cases dealt with imminency of an injury, not concreteness. *See Kuhnlein*, 646 So. 2d at 720 (finding standing to challenge a $295 impact fee for plaintiffs who had not yet paid the fee, nor requested a refund of the fee, where "[t]he fact that these plaintiffs face penalties for failure to pay an allegedly unconstitutional tax is sufficient to create standing under Florida law"); *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885 (Fla. 2003) (finding no requirement for medical providers to institute a collection action against insured parties prior to suing insurers for unpaid benefits). The imminent economic injuries in both cases were certain to occur and therefore were

"concrete," even if they had not yet been suffered by the plaintiff. In this case, there is no allegation that appellant will be harmed by the improper receipt. Again, there is also not a risk of imminent injury as appellant is still in possession of the improper receipt.

Further, like in federal court, standing for a class action claim requires a "case or controversy" between the parties, which exists "if a party alleges an actual or legal injury." *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 116-17 (Fla. 2011). The Florida Supreme Court determined that the plaintiff in *Sosa* suffered an economic injury when he was charged an additional service charge, even though he was credited for the overcharge. *Id.* at 117. The economic injury constituted "an actual injury . . . for which the relief sought will grant redress." *Id.* Like *State v. J.P.*, the court in *Sosa* also cited to the "distinct and palpable, not abstract or hypothetical" standard for injury. *Id.*

## 2. Federal Standing Law

We also find federal case law as to standing to be persuasive. *Maestas v. State*, 76 So. 3d 991, 994 (Fla. 4th DCA 2011). In *Sosa*, the Florida Supreme Court also cited with approval the heart of federal standing requirements by noting that to satisfy a standing requirement for a class action claim, a "class representative must illustrate that a *case or controversy* exists between him or her and the defendant, and that this *case or controversy* will continue throughout the existence of the litigation." *Sosa*, 73 So. 3d at 116 (emphasis added). This "case or controversy" standard remains central to federal standing analysis. *See Lujan*, 504 U.S. at 574.

Plaintiff's case is similar to *Muransky v. Godiva Chocolatier, Inc.* Like this case, the plaintiff in *Muransky* also received a receipt with ten digits of his credit card number. 979 F.3d at 922. Muransky's identity was never stolen, and the complaint requested only statutory damages with no damages alleged for personal injury. *Id.* The Eleventh Circuit held that Muransky did not have standing to pursue an action identical to appellant's in this case because "alleging a statutory violation is not enough to show injury in fact." *Id.* at 924.

The Eleventh Circuit was also persuaded that Congress subsequently issued the Clarification Act. *See* Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241 § 2(a)(1). This Clarification Act noted that "hundreds of lawsuits" had been filed for receipts printed with card expiration dates, although "[n]one of these lawsuits contained an allegation of harm to any consumer's identity." *Id.* at § 2(a)(4)-(5).

6

Congress explicitly held that cases with printed expiration dates without further noncompliance were not willful, therefore not subjecting companies to statutory damages. 15 U.S.C. § 1681n(a), (d). Congress described "the continued appealing and filing of these lawsuits" as "a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." Pub. L. No. 110-241 § 2(a)(7).

Under the facts of the instant case, we find *Muransky* persuasive, which aligns with our holding that appellant has not shown a concrete injury sufficient for standing.

*Muranksy* relied in large part on the Supreme Court's holding in *Spokeo, Inc. v. Robins*, which is also similar to the instant case. The plaintiffs sued Spokeo for disseminating incorrect personal information on its search engine under the Fair Credit Reporting Act ("FCRA"). 578 U.S. at 333. The FCRA awarded damages similar to FACTA, either actual damages or statutory damages ranging from $100 to $1,000 per violation. *Id.* at 335. The Supreme Court in *Spokeo* held that "a bare procedural violation, divorced from any concrete harm" did not confer standing. *Id.* at 341.

We note that Justice Thomas's concurrence in *Spokeo* also drew a distinction in the common law between enforcing "private rights" and "public rights." *Id.* at 343. As Justice Thomas stated: "Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. 'Private rights' are rights 'belonging to individuals, considered as individuals.'" *Id.* at 344 (quoting 3 W. Blackstone, Commentaries *2). In contrast, violations of public rights, those "rights that involve duties owed 'to the whole community, considered as a community, in its social aggregate capacity,'" require a showing of further injury to the plaintiff. *Id.* at 345 (quoting 4 W. Blackstone, Commentaries *5).

Using this paradigm, FACTA creates a "public right." It requires "general compliance with regulatory law." *Id.* (quoting Ann Woolhander & Caleb Nelson, *Does History Defeat Standing Doctrine?*, 102 Mich. L. Rev. 689, 693 (2004)). Similar to the FCRA in *Spokeo*, FACTA "creates a series of regulatory duties." *Id.* at 348. "A plaintiff," such as appellant, "seeking to vindicate a public right embodied in a federal statute, however, must demonstrate that the violation of that public right has caused him a concrete, individual harm distinct from the general population." *Id.* Here, appellant did not allege that he suffered a concrete, individualized harm

7

as a result of the credit card numbers being printed on his receipt. Thus, appellant does not have an injury-in-fact that is concrete and particularized to meet standing requirements.

The United States Supreme Court in *TransUnion* recently reiterated its adherence to the three-part standing test, as cited in *State v. J.P.*: "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan*, 504 U.S. at 560-61).

*TransUnion* also stated that "this Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2205 (quoting *Spokeo*, 578 U.S. at 341). *TransUnion* reemphasized what the United States Supreme Court said in *Spokeo*, that "standing requires a concrete injury even in the context of a statutory violation." *Id.* In the present case, like in *Spokeo* and *TransUnion*, the facts lacked a concrete injury even in the context of an alleged statutory violation. *TransUnion* concluded that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation." *Id.*

In *TransUnion*, inaccurate alerts were placed in the TransUnion credit files. *Id.* at 2201. As to those plaintiffs where the false information was disseminated, the Court found that the individuals had suffered concrete harm. *Id.* at 2208-09. But as to those plaintiffs for whom false information was never provided to third parties or never resulted in a denial of credit, the United States Supreme Court found no concrete injury:

> Here, the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized—that is, that the inaccurate OFAC alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit. Nor did those plaintiffs present evidence that the class members were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses. Therefore, the 6,332 plaintiffs' argument for standing for their damages claims based on an asserted risk of future harm is unavailing.

*Id.* at 2211.

8

Similarly, in the present case, the risk of future harm to appellant is also unavailing, since appellant kept the credit card receipt and there is no danger that the credit card number could result in any concrete injury to appellant.[2]

In summary, we find appellant did not demonstrate an injury in fact that was "concrete," "distinct and palpable," and "actual or imminent." Failing this test, the trial court correctly granted Red Wing's motion to dismiss. As such, we affirm.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[2] The present case concerned retrospective damages and not future harm:

> As [the Supreme Court] has recognized, a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.
>
> But a plaintiff must "demonstrate standing separately for each form of relief sought." Therefore, a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages.

*Id.* at 2210 (citations omitted).