455 So.2d 326 (1984)
DEPARTMENT OF REVENUE, Appellant,
v.
WARDAIR CANADA, LTD., Appellee.
No. 64036.
Supreme Court of Florida.
June 14, 1984.
Rehearing Denied September 12, 1984.
*327 Jim Smith, Atty. Gen. and Joseph C. Mellichamp, III, Asst. Atty. Gen., and Larry Levy, General Counsel and Stephen J. Keller, Asst. General Counsel, Tallahassee, for appellant.
S. Alan Stanley of Turner, Fascell, Russo & Stanley, Coral Gables, for appellee.
ADKINS, Justice.
This case is before us on an order from the First District Court of Appeal certifying the issue in the case to be of great public importance. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
This case arose with the filing of a complaint in the circuit court in Leon County by Wardair Canada, Ltd. (hereinafter Wardair) challenging the constitutionality of chapter 83-3, Laws of Florida. The court consolidated this case with an action filed by Air Jamaica for the purpose of trial. The parties stipulated to a procedure whereby the airline was allowed to self-accrue the sales tax imposed under chapter 83-3 during the pendency of the proceedings subject to certain conditions. The circuit court entered an order of final judgment on July 19, 1983, separate from its order in the Air Jamaica case. The court upheld the constitutionality of the law dismissing three of Wardair's counts in its complaint but ruled in favor of the airline in recognizing an exemption to the airlines to the motor fuel and special fuel tax imposed by the law by virtue of certain executive agreements with the United States. The trial judge had previously upheld chapter 83-3 in Delta Airlines, Inc. v. Department of Revenue, No. 83-761 (Leon County Cir.Ct.  Civ.Div. May 23, 1983). The Department of Revenue filed its notice of appeal from the trial court's final judgment on July 21, 1983. Shortly thereafter, Wardair filed its notice of cross-appeal. The First District Court of Appeal then certified the case to this Court.
This Court has ruled on three of the four issues raised by Wardair in its original complaint and on cross-appeal in its decision in Delta Airlines, Inc. v. Department of Revenue, 455 So.2d 317 (Fla. 1984). The *328 department has appealed the circuit court's ruling recognizing an exemption to the excise tax for the foreign airlines. The circuit court found that chapter 83-3 was inconsistent with a Non-scheduled Air Service Agreement between the United States and Canada, May 8, 1974, T.I.A.S. 7826.
The circuit court's order noted that article XII(1) of the Air Services Agreement exempts both the United States and Canada from national duties and charges on fuels and article XIV provides that neither party will discriminate against the other. The court then relied on its holding in Lineas Aereas Costarricenses, S.A. v. Department of Revenue, No. 83-761 (Fla. 2d Cir. June 21, 1983). In that case the court held that when the federal policy is to exempt foreign airlines from fuel taxes and prevent discrimination, the individual states are precluded from acting in that area.
The department argues that the agreement is inapplicable to estop the enforcement of chapter 83-3 for two reasons: 1) the agreement is not self-executing; and 2) the agreement specifically addresses only national customs, duties, excise taxes and charges with no application to or restriction on state taxation schemes. The circuit court did not expressly recognize a distinction between executory and non-executory agreement provisions in its order.
The department asserts that the following provisions in the agreement are executory and thus require an additional legislative enactment to effect implementation:
Each Contracting Party shall exempt the carriers of the other Contracting Party to the fullest extent possible under its national law from import restrictions, customs duties, excise taxes, inspection fees, and other national duties and charges on fuel, lubricants, consumable technical supplies ... and other items intended for use solely in connection with the operation, maintenance or servicing of aircraft of the carriers of the other Contracting Party. The exemptions granted by this paragraph shall apply to items:
(a) introduced into the territory of one Contracting Party by or on behalf of the carriers of the other Contracting Party;
(b) retained on board aircraft of the carriers of one Contracting Party upon arriving in or leaving the territory of the other Contracting Party;
(c) taken on board aircraft of the carriers of one Contracting Party in the territory of the other Contracting Party and intended solely for use in international air services; whether or not such items are consumed wholly within the territory of the Contracting Party granting the exemption.
Because we agree with the department's conclusion that the agreement is inapplicable because it specifically addresses only national customs, duties, and excise taxes and charges, we find it unnecessary to determine whether these provisions are executory or not. The Air Services Agreement is not a treaty ratified by the United States Senate. However, it is a formally executed international agreement and, as such, is valid and binding as if approved by act of Congress. United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942). The purpose of the agreement is obviously to preserve, protect and promote the continued development of a system of air transport free from discriminatory practices and to support equal commercial opportunity between the nations.
The doctrine of preemption which is given effect through the supremacy clause mandates that federal law overrides any state regulation where there is an actual conflict between the two sets of legislation such that both cannot validly stand. The United States Supreme Court has formulated analytical standards for preemption. In Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), the Court construed the Federal Alien Registration Act of 1940 to override Pennsylvania's Alien Registration Act of 1939. The Court noted that if state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *329 federal regulation must preempt state regulation to give effect to the desired national policy. Id. at 67, 61 S.Ct. at 404.
Fifteen years later the validity of a Pennsylvania state regulation was again before the Court in Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). The Court held that federal anticommunist legislation superseded the state's sedition act and enunciated a three-prong test to determine the supremacy of a federal regulatory scheme over state regulation in the same or similar area. The test involves an analysis of: 1) the pervasiveness of the federal regulatory scheme; 2) federal occupation of the field as necessitated by the need for national uniformity; and 3) danger of conflict between state laws and the administration of the federal program.
The provisions in the agreement between the United States and Canada clearly express an intent to apply to only national taxes and duties. We do not believe that the scheme of this agreement is so pervasive so as to permit the reasonable inference that Congress intended to preclude the state's power to tax. Also, the competitive equality between the two nations would be destroyed if the United States air carriers had to pay state excise taxes on fuel purchases and the Canadian carrier did not.
We determined in our decision in Delta Air Lines, Inc. v. Department of Revenue, 455 So.2d 317 (Fla. 1984), that the tax imposed by chapter 83-3 met the four-prong test of Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and thus did not violate the commerce clause. In 1979, the United States Supreme Court decided the case of Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), setting forth two additional requirements to be met when foreign commerce is involved. The Court stated:
[A]n inquiry more elaborate than that mandated by Complete Auto is necessary when a State seeks to tax the instrumentalities of foreign, rather than interstate commerce. In addition to answering the nexus, apportionment, and nondiscrimination questions posed in Complete Auto, a court must also inquire, first, whether the tax, notwithstanding apportionment, creates a substantial risk of international multiple taxation, and, second whether the tax prevents the Federal Government from "speaking with one voice when regulating commercial relations with foreign governments." If a state tax contravenes either of these precepts, it is unconstitutional under the Commerce Clause.
Id. at 451, 99 S.Ct. at 1823.
The trial court correctly found that the first requirement of Japan Line was not a concern because there had been no de facto showing of multiple taxation or substantial risk of the same. Moorman Manufacturing Co. v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197; Shell Oil Co. v. State Board of Equalization, 64 Cal.2d 713, 51 Cal. Rptr. 524, 414 P.2d 820 (1966).
For the reasons previously discussed, we also hold that the tax meets the second requirement of Japan Line. The agreement provides for efforts at exemption from national excise taxes, inspection fees and other national charges but does not provide for exemptions from state excise taxes. We must presume this has been done intentionally. We do not believe this legislation prevents our federal government from speaking with one voice.
Accordingly, we affirm the order of the circuit court as to the constitutionality of chapter 83-3 except that portion of the law pertaining to a tax credit for Florida corporations. In Delta we determined that portion to be unconstitutional and it was stricken from the law. We reverse the circuit court to the extent that it recognized an exemption for foreign airlines.
It is so ordered.
ALDERMAN, C.J., and BOYD and SHAW, JJ., concur.
OVERTON, J., dissents with an opinion in which McDONALD, J., concurs.
*330 OVERTON, Justice, dissenting.
I dissent. I find that the State of Florida has no authority to ignore valid air service agreements between the United States Government and the governments of other countries which exempt airlines based in participating nations from duties and charges on fuels. In my view, the individual states of this country are precluded by those agreements from taxing fuel used by foreign airlines. To accept the majority's view means that all United States airlines could, in turn, be subject to local government taxation on fuel in foreign countries. We are one country and our constitution requires us to speak with one voice when the federal government enters into agreements and treaties with foreign governments. See U.S. Const. art. I, § 8; art. VI. This state is precluded from enforcing this tax against this airline.
McDONALD, J., concurs.