IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

DIRECTV, INC., N/K/A DIRECTV, LLC, AND ECHOSTAR SATELLITE, L.L.C., N/K/A DISH NETWORK, L.L.C.,

       Appellants,

v.

STATE OF FLORIDA, DEPARTMENT OF REVENUE, MARCUS AND PATRICIA OGBORN, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, JIM ZINGALE, ACTING IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE FLORIDA DEPARTMENT OF REVENUE, AND FLORIDA CABLE TELECOMMUNICATIONS ASSOCIATION,

       Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NOS. 1D13-5444 & 1D14-0292

Opinion filed June 11, 2015.

An appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

Katherine E. Giddings and Kristen M. Fiore of Akerman LLP, Tallahassee; Peter O. Larsen, Timothy J. McDermott, and Aleksas A. Barauskas of Akerman LLP, Jacksonville; E. Joshua Rosenkranz and Jeremy N. Kudon of Orrick, Herrington &

Sutcliffe LLC, New York, N.Y., pro hac vice; and Eric A. Shumsky of Orrick, Herrington & Sutcliffe LLC, Washington, D.C., pro hac vice, for Appellants.

Christine Davis Graves of Carlton Fields Jorden Burt, P.A., Tallahassee; John A. Hinman of Hinman & Carmichael, San Francisco, CA, pro hac vice, for Amicus Curiae National Association of Wine Retailers.

Joseph C. Mellichamp, III, and J. Clifton Cox, Assistant Attorneys General, Tallahassee, for Appellee State of Florida.

Amelia T. Rudolph, Eric S. Tresh, and Zachary T. Atkins of Sutherland Asbill & Brennan LLP, Atlanta, GA, pro hac vice; David Konuch, Tallahassee, for Appellee Florida Cable Telecommunications Association.

ROBERTS, J.

This appeal arises from a final summary judgment finding that section 202.12(1), Florida Statutes, which imposes a higher tax rate on satellite services than on cable services, is constitutional. The Appellants, Directv, Inc. and Echostar, L.L.C. ("the satellite companies"), contend that the statute unconstitutionally discriminates against interstate commerce in both effect and purpose, which is in violation of the Commerce Clause. We agree and reverse.

## I. Factual background

### A. Cable and satellite companies

The satellite companies provide multi-channel video programming to subscribers in Florida and nationwide by means of satellites stationed above the earth. These satellites gather and transmit the programming signals from uplink facilities located in Arizona, California, Colorado, and Wyoming. Subscribers in Florida receive programming by means of small satellite dishes mounted on or near their homes. As such, satellite companies do not utilize local infrastructure because they transmit their signals directly to their subscribers.

Cable companies, on the other hand, provide multi-channel video programming using local distribution facilities. Specifically, cable companies distribute their programming from headends spread throughout the state that compile the programming and deliver the packages to customers using coaxial or fiber optic cables that are laid across the state in a ground-based network and usually utilize public rights-of-way.

### B. The Communications Services Tax

Before 2001, Florida's sales tax on television services was six percent for all subscribers regardless of whether the provider was a cable or satellite company. § 212.05, Fla. Stat. (1999). Cable companies were required to pay franchise fees or rent to local governments in order to use the local rights-of-way for their ground-

based networks. However, in 2001, the Florida Legislature passed the Communications Services Tax Simplification Law ("the CST"), which imposed a differential tax rate for cable and satellite services. § 202.12(1), Fla. Stat. (2001) (taxing cable service at 6.8 percent and satellite service at 10.8 percent). Currently, cable service is taxed at a rate of 6.65 percent, and satellite service is taxed at a rate of 10.8 percent. § 202.12(1), Fla. Stat. (2014). It is this difference in taxation rates that the satellite companies allege violates the dormant Commerce Clause.

## II. Procedural background

The satellite companies filed suit in 2005 seeking a declaratory judgment holding the sales tax provision in the CST unconstitutional, a permanent injunction against the enforcement of the provision, and a refund of the taxes paid pursuant to the provision.[1] In ruling on cross-motions for summary judgment, the trial court held that section 202.12(1), Florida Statutes, does not violate the Commerce Clause because it does not benefit in-state economic interests or similarly-situated entities.

## III. Standard of review

An order granting summary judgment is reviewed *de novo* to determine whether there are genuine issues of material fact and whether the trial court

---

[1] This suit was consolidated with another case filed by satellite customers that made substantially similar arguments. Those customers are named as Appellees in this appeal but do not appear to be participating.

4

properly applied the correct rule of law. Futch v. Wal-Mart Stores, Inc., 988 So. 2d 687, 690 (Fla. 1st DCA 2008). "Summary judgment should be affirmed only if the movant has proven the nonexistence of any material factual dispute." Auto-Owners Ins. Co. v. Young, 978 So. 2d 850, 852 (Fla. 1st DCA 2008). In considering a motion for summary judgment, the court must draw all reasonable inferences from the evidence in favor of the non-moving party, and even the slightest doubt as to the existence of a disputed issue of material fact will preclude summary judgment. See Laidlaw v. Krystal Co., 53 So. 3d 1128, 1129 (Fla. 1st DCA 2011).

## IV. Tax refund - facial challenge

The Appellee, the Department of Revenue ("the Department"), argues that the satellite companies cannot seek a tax refund because they failed to exhaust the available administrative remedies. To receive a tax refund, a taxpayer must file a refund application with the Department. § 215.26(2), Fla. Stat. (2005). If the refund application is denied, the taxpayer can contest the denial in the circuit court. § 72.011(2)(a), Fla. Stat. (2005). Here, there is no evidence in the record that the satellite companies filed a refund application. As such, the Department is correct that the parties failed to exhaust the available administrative remedies.

However, there is an exception to the process required by Chapter 215. If a taxpayer is seeking a refund pursuant to section 215.26, Florida Statutes, and the

sole basis for the refund is that the statute imposing the tax is facially unconstitutional, the circuit court will have jurisdiction despite the taxpayer's failure to exhaust administrative remedies. Sarnoff v. Fla. Dep't of Highway Safety & Motor Vehicles, 825 So. 2d 351, 357 (Fla. 2002). This exception is known as the direct-file exception. Id.

The Department argues the direct-file exception is inapplicable here because this is not a facial challenge to the statute. This Court describes a facial challenge as follows:

> A facial challenge to a statute is more difficult than an "as applied" challenge because the challenger must establish that no set of circumstances exists under which the statute would be valid. Except in a First Amendment challenge, the fact that the act might operate unconstitutionally in some hypothetical circumstance is insufficient to render it unconstitutional on its face; such a challenge must fail unless no set of circumstances exists in which the statute can be constitutionally applied. A facial challenge considers only the text of the statute, not its application to a particular set of circumstances, and the challenger must demonstrate that the statute's provisions pose a present total and fatal conflict with applicable constitutional standards.

Cashatt v. State, 873 So. 2d 430, 434 (Fla. 1st DCA 2004).

Here, the satellite companies argue that there is no set of circumstances in which the CST would be valid because the text of the statute shows it was enacted with a discriminatory purpose and has a discriminatory effect, which violates the Commerce Clause. The Department counters that arguments regarding discriminatory purpose and effect cannot be facial challenges. For the basis of its

6

argument, the Department references the following United States Supreme Court quote: "[A] tax may violate the Commerce Clause if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce." Amerada Hess Corp. v. Dir., Div. of Taxation, N.J. Dep't of Treasury, 490 U.S. 66, 75 (1989). The Department has interpreted this statement to mean that arguments regarding discriminatory intent or effect cannot be facial challenges. This is an incorrect interpretation of this statement. The Department is conflating a type of general constitutional challenge with a specific type of Commerce Clause challenge. A party can pose a facial challenge to a statute by arguing that there is no set of circumstances where it could apply constitutionally because of its discriminatory purpose or its discriminatory effect on interstate commerce. Because this is the satellite companies' argument, the direct-file exception applies, and this Court can properly consider the effect and purpose arguments.

### V. Commerce Clause

The Commerce Clause states, "The Congress shall have power to . . . regulate Commerce with foreign Nations, and among the several states." Article I, § 8, cl. 3, U.S. Const. Attendant with this grant of authority to Congress, the United States Supreme Court has recognized a dormant Commerce Clause, which limits the states' power to regulate interstate commerce. Simmons v. State, 944

7

So. 2d 317, 329 (Fla. 2006). A state or local regulation violates the dormant Commerce Clause if the regulation treats out-of-state commerce differently from in-state commerce. Reinish v. Clark, 765 So. 2d 197, 211 (Fla. 1st DCA 2000). To discriminate, the statute must place a greater economic burden on those industries or companies outside the state and give an economic advantage to those operating within the state. Id.; see also Simmons, 944 So. 2d at 330 ("[S]tatutes that openly discriminate against out-of-state economic interests in order to protect in-state interests are subject to a per se rule of invalidity."). Where a law is found to be discriminatory, it will be stricken as a violation of the Commerce Clause without any additional inquiry. Reinish, 765 So. 2d at 211.

There are three ways in which a statute can discriminate against out-of-state interests: (1) it may be facially discriminatory; (2) it may discriminate in its practical effect; or (3) it may have a discriminatory intent. Amerada Hess, 490 U.S. at 75. Here, the satellite companies argue that the sales tax portion of the CST is discriminatory in effect and purpose.

**1. Discriminatory effect**

A state law is discriminatory in effect if it affects similarly-situated entities in a market by imposing disproportionate burdens on out-of-state interests and conferring advantages upon in-state interests. Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 10 (1st Cir. 2010) (citing to Or. Waste Sys., Inc., v. Dep't of

8

Envtl. Quality, 511 U.S. 93, 99 (1994) & Gen. Motors Corp. v. Tracy, 519 U.S. 278, 298 (1997)). Here, the sales tax portion of the CST is discriminatory in effect because it affects similarly-situated entities, cable and satellite companies, by imposing a disproportionate burden on satellite service and conferring an advantage upon cable services, which use in-state infrastructure.

## A. Substantially similar entities

The trial court below found that satellite and cable companies are inherently different entities, which took the CST out of the purview of the Commerce Clause. "Any notion of discrimination assumes a comparison of substantially similar entities." Tracy, 519 U.S. at 298. As such, if the differences between two companies render the entities not substantially similar, the Commerce Clause is not implicated. Id. at 298-99 (holding that a statute did not discriminate in practical effect because the two entities in consideration were not similar markets and/or competitors and were not similarly situated). The United States Supreme Court further explained:

> This is so for the simple reason that the difference in products may mean that the different entities serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed. If in fact that should be the case, eliminating the tax or other regulatory differential would not serve the dormant Commerce Clause's fundamental objective of preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.

Id. at 299.

Here, cable and satellite companies provide multichannel television programming to Florida subscribers. As such, they operate in the same market and are direct competitors within that market. They differ in the deployment of technology, the need for local infrastructure, and the additional services offered. However, mere differences in how a service is provided is not enough to overcome the fact that the companies compete in the same market and sell virtually identical products at retail.

## B. In-state interests

In addition to a finding the companies at issue are similarly-situated entities, courts must also find in-state interests to be present in order for the Commerce Clause to be implicated. Oregon Waste, 511 U.S. at 99. If a tax discriminates against interstate commerce by providing a direct commercial advantage to local businesses, it violates the Commerce Clause. Boston Stock Exch. v. State Tax Comm'n, 429 U.S. 318, 329 (1977); Maryland v. Louisiana. 451 U.S. 725 (1981) (holding that the tax "unquestionably discriminates against interstate commerce in favor of local interests" because it provided an exemption for gas consumed within the state and provided a tax credit to encourage local mineral exploration). Here, the Appellees contend that because satellite and cable companies are interstate companies with corporate headquarters and principal places of business located outside of Florida, no in-state interests are benefited and the Commerce Clause is

not implicated. However, the interstate nature of the business does not necessarily preclude a finding of a local economic interest. Commerce Clause analysis focuses not on the domiciles of particular corporations, but on whether a law results in differential treatment of in-state and out-of-state economic interests.

The Florida Supreme Court examined a Commerce Clause challenge involving interstate businesses in Delta Air Lines, Inc. v. Department of Revenue, 455 So. 2d 317, 318 (Fla. 1984). Delta involved a tax credit that applied to air carriers with a corporate or business home office in Florida and maintained a workforce of more than 1200 employees in Florida. Id. Air carriers that did not meet these requirements would not receive the credit, which could amount to up to five million dollars. Id. The Florida Supreme Court held that the "corporate income tax credit provide[d] a direct commercial advantage to select Florida-based air carriers and thereby violate[d] the Commerce Clause." Id. at 321.

Like the air carriers in Delta, the satellite and cable companies are interstate in nature with local economic interests. While the cable companies do not have offices located within the state, they employ Florida workers and use extensive local infrastructure. It is this local infrastructure and local employment that provides an in-state economic interest for the cable companies. Because the sales tax portion of the CST burdens interstate commerce by imposing a higher tax rate on those communication companies that do not invest in local economies, it

11

violates the Commerce Clause.

## C. Effect of CST

### i. Effect case law

This case is similar to a number of other cases where the Supreme Court invalidated taxes that had the effect of favoring companies that performed their production activities locally or used local infrastructure for their production. See Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 265-72 (1984); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 349-51 (1977) (finding that a North Carolina statute, which required all closed containers of apples sold in the state to bear the applicable U.S. grade or standard that was used by North Carolina apple producers, violated the dormant Commerce Clause because it discriminated against apples from other states that used a different grading system); C&A Carbone v. Town of Clarkstown, 511 U.S. 383, 390-91 (1994); Dean Milk Co. v. City of Madison, 340 U.S. 349 (1951) (striking down a city ordinance that required all milk sold in the city, from both in-state and out-of-state, to be pasteurized within five miles of the city lines). The situation here is analogous to this line of authority because the businesses receiving a benefit from the differential tax rate, the cable companies, "produce" their services locally by using local infrastructure. Because the CST favors communications services that use local infrastructure, it has a discriminatory effect on interstate commerce.

## ii. Aggregate tax rate

The Department argues that there is no discrimination in practical effect because if this Court considers the entirety of the CST, cable and satellite are taxed roughly the same. The Florida Supreme Court has ruled that courts should consider an entire taxing scheme in its analysis of a certain section. Dep't of Revenue v. Kuhnlein, 646 So. 2d 717, 722 (Fla. 1994). In Kuhnlein, the court examined whether an act imposing an impact fee only on vehicles purchased or titled in other states violated the Commerce Clause. Id. at 719. The Department argued that the overall taxing scheme for vehicles needed to be considered. Id. at 722. The court agreed, finding that "reviewing courts must consider the actual effects of statutes, rather than isolated technicalities." Id. (internal citations omitted).

Here, cable and satellite services are taxed at different rates under section 202.12(1) of the CST, which results in a four-percent differential. See § 202.12(1), Fla. Stat. (2005) (providing that satellite service is taxed at 10.8 percent and cable service is taxed at 6.8 percent).[2] However, section 202.19 of the CST provides for the imposition of local CSTs for cable companies. § 202.19, Fla. Stat. (2005). Counties and municipalities may tax cable companies up to 5.1 percent. §

---

[2] Cable and satellite services are also subject to a Gross Receipts Tax, which is equal for both types of services. § 203.01(2)(b), Fla. Stat. (2005) ("The rate applied to communications services shall be 2.37 percent.").

202.19(2)(a), Fla. Stat. (2005). Satellite companies are not subject to the local CST because federal law exempts satellite service from all local taxes and fees. 47 U.S.C. § 152 (1996). The Department concludes that in those municipalities where the local CST is four percent, the tax rate for cable and satellite services is roughly equal. However, this method of attaining a semblance of equality is untenable. There is no guarantee that the local governments charging four percent will continue to do so, and the Department fails to offer the number of counties that must charge the four percent in order for the tax rate to be considered equal between satellite and cable services. This is an insufficient method of ensuring equal treatment.

### iii. Operational differences

The Department relies on two United States Supreme Court cases, Exxon v. Governor of Maryland, 437 U.S. 117 (1978), and Amerada Hess v. Division of Taxation, 490 U.S. at 66, to argue that the differential tax rate is a result of the differences in the nature of cable and satellite services rather than the location of their activities and, as such, there is no discriminatory effect. The Department's analysis and reliance on these two cases is affirmed in the other appellate court decisions addressing this issue. See Directv, Inc. v. Treesh, 487 F.3d 471, 481 (6th Cir. 2007); Directv, Inc. v. State, 632 S.E.2d 543, 663-69 (N.C. Ct. App. 2006), Directv, Inc. v. Levin, 941 N.E.2d 1187, 1195 (Ohio 2010).

14

In Exxon, the Maryland Legislature, responding to evidence that oil producers were favoring company-operated gasoline stations, enacted a statute prohibiting oil producers or refiners from operating retail service stations in the state. 437 U.S. at 117. The oil producers filed suit arguing that the statute violated the Commerce Clause because it interfered with the functioning of the interstate market. Id. at 127. The court rejected the appellants' argument, finding that the Commerce Clause does not protect a particular structure or method of operation in a retail market. Id. As such, the court held the statute did not violate the Commerce Clause. Id. at 127-28.

Following Exxon, the Amerada Hess court examined the dormant Commerce Clause's application to a state tax law. 490 U.S. at 68-69. In 1980, Congress had enacted the Crude Oil Windfall Profit Tax Act, which imposed a tax on the "windfall" profit that crude-oil producers receive from the oil they produce. Id. at 69 (citing to 26 U.S.C. §§ 4986-4998 (1980)). The Act provided that, for federal income tax purposes, the windfall profit tax would be deductible. Id. In 1986, New Jersey passed its Corporation Business Tax Act, which imposed a tax on a portion of the entire net income of a corporation for the privilege of doing business within the state. Id. (citing to N.J. Stat. § 54:10A-1 (1986)). Under the New Jersey Act, a corporation's entire net income must be determined without the exclusion, deduction, or credit of taxes paid or accrued to the federal government.

15

Id. The appellants argued that the add-back provision, by denying a deduction for windfall profit tax payments, discriminated against oil producers who sold their own oil in favor of independent retailers who did not produce oil. Id. at 78. The court held that "[w]hatever different effect the add-back provision may have on these two categories of companies results solely from differences between the nature of their businesses, not from the location of their activities." Id. As such, the court found no violation of the Commerce Clause. Id. at 79.

Other jurisdictions have examined these two cases and misapplied their holdings to differential taxes on satellite and cable. In Directv v. State, the Court of Appeals of North Carolina examined a North Carolina statute that imposed a sales tax on "direct-to-home satellite service," but not on cable service. 632 S.E.2d at 660 (citing to N.C. Stat. § 105-164.4(a)(6), (2001)). The court applied Exxon and Amerada Hess and found that even if satellite companies were able to establish an in-state distribution system, the tax would still be imposed "because of the means that they use to deliver" their services. Id. at 667-68. Similarly, the court found that cable companies with out-of-state distribution systems would still be exempt from the tax imposed because of how they deliver their services. Id. at 668. The court concluded that the differential tax rate was the result of operational differences in the delivery of cable and satellite and not from the geographical location of the businesses and, as such, it did not have a discriminatory effect in

16

violation of the Commerce Clause.  Id. at 668.

Similarly, in Directv v. Treesh, the Sixth Circuit Court of Appeals examined a Kentucky taxing scheme that taxed cable and satellite at the same rate but prohibited local government from levying franchise fees and taxes on cable companies.  487 F.3d at 475.  Relying on Exxon and Amerada Hess, the court found that cable and satellite services were "distinct" and "relied upon two very different means of delivering broadcasts."  Id. at 480.  Because the "dormant Commerce Clause is intended to protect interstate commerce, and not particular firms engaged in interstate commerce, or the modes of operation used by those firms," the court found it was not violated by the taxing scheme.  Id. at 480-81.

Finally, in Directv v. Levin, the Ohio Supreme Court considered an Ohio statute that imposed a sales tax on satellite service, but not on cable service.  941 N.E.2d at 1191 (citing to R.C. 5739.01 (2003)).  The Ohio Supreme Court, relying on Exxon and Amerada Hess, as well as State and Treesh, found that the tax did not discriminate based on geography and that the cable industry was not a local interest.  Id. at 1195-96.

Exxon and Amerada Hess are clearly distinguishable from this case because the statute at issue in Exxon and the tax at issue in Amerada Hess had no effect on the interstate flow of goods and did not give local interests a competitive advantage over out-of-state interests.  Here, it is undisputed that cable and satellite television

17

programmers provide programming using different methods. However, one important facet of that difference is that cable providers utilize local infrastructure to provide their services. Cable provider's reliance on local rights-of-way transforms its interests into local interests. The sales tax portion of the CST gives a competitive advantage to television programming providers that use local rights-of-way. This shows the CST has a discriminatory effect. The operational differences present in this case do not shield the CST from Commerce Clause scrutiny.

Because the CST has a discriminatory effect on satellite companies, it violates the Commerce Clause, and the trial court erred in finding otherwise.

**2. Discriminatory purpose**

A finding that state legislation constitutes economic protectionism may be made on the basis of discriminatory purpose. Bacchus, 468 U.S. at 270 (citing to Hunt, 432 U.S. at 352-353). To determine whether there is discriminatory purpose, courts look to the language and the legislative history of the statute in question. Bacchus, 468 U.S. at 270-72. For example, in Bacchus, the court looked at the legislative history of the statute that exempted Hawaiian-produced fruit wine and okolehao liquor from an alcohol tax. Id. at 270-71. In Senate Committee reports, the Hawaii Legislature stated that the exemption of the okolehao from the alcohol tax was to encourage and promote the establishment of the okolehao liquor

18

industry.  Id. at 270 (citing to In re Bacchus Imports, Ltd., 656 P.2d 724, 730 (Haw. 1982)).  The reports also provided that the exemption of fruit wine manufactured in Hawaii with Hawaiian products was intended to help stimulate the local fruit wine industry.  Bacchus, 468 U.S. at 270-71 (citing to In re Bacchus, 656 P.2d at 730).

The Appellants provided the trial court with affidavits from lobbyists and two former legislators, which stated that the cable lobbyists sought a differential tax rate for cable and satellite because satellite was beginning to take over some of cable's market share.  The trial court did not err in refusing to consider these affidavits.  The intent of the Legislature in enacting a statute is "best revealed through the actual language used and any applicable legislative history, rather than through the testimony of individual legislators regarding their subjective intentions in proposing, amending, or voting for or against a particular piece of legislation." League of Women Voters of Fla. v. Fla. House of Representatives, 132 So. 3d 135, 150 (Fla. 2013) (citing to Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007) (stating the general principle of statutory construction that "legislative intent is determined primarily from the statute's text")).  Here, section 202.105, Florida Statutes, provides the legislative findings and intent of the CST:

> (1) It is declared to be a specific legislative finding that the creation of this chapter fulfills important state interests by reforming the tax laws to provide a fair, efficient, and uniform method for taxing communications services sold in this state. This chapter is essential to

the continued economic vitality of this increasingly important industry because it restructures state and local taxes and fees to account for the impact of federal legislation, industry deregulation, and the convergence of service offerings that is now taking place among providers. This chapter promotes the increased competition that accompanies deregulation by embracing a competitively neutral tax policy that will free consumers to choose a provider based on tax-neutral considerations. This chapter further spurs new competition by simplifying an extremely complicated state and local tax and fee system. Simplification will lower the cost of collecting taxes and fees, increase service availability, and place downward pressure on price. Newfound administrative efficiency is demonstrated by a reduction in the number of returns that a provider must file each month. By restructuring separate taxes and fees into a revenue-neutral communications services tax centrally administered by the department, this chapter will ensure that the growth of the industry is unimpaired by excessive governmental regulation. The tax imposed pursuant to this chapter is a replacement for taxes and fees previously imposed and is not a new tax. The taxes imposed and administered pursuant to this chapter are of general application and are imposed in a uniform, consistent, and nondiscriminatory manner.

§ 202.105, Fla. Stat., (2001). There is nothing in the language of the chapter implementing the CST that shows a discriminatory purpose.

The specific statutory section at issue, section 202.12, Florida Statutes, was first enacted on October 1, 2001. There was no mention of an intent to favor cable companies in any of the 2000 Senate and House Journals. Additionally, in the April 14, 2000, Senate Staff Analysis and Economic Impact Statement, the analysts found that the CST's impact would provide the benefit of a simplified tax structure for all communication service providers. Senate Staff Analysis and Economic Impact Statement, Senate Bill 1338 (April 14, 2000). Unlike the Senate

20

Committee reports in <u>Bacchus</u>, there is no evidence that the Legislature sought to favor the cable providers.

Therefore, the trial court did not err when it found there was no evidence of a discriminatory purpose.

## VII.  Conclusion

Because the sales tax portion of the CST violates the Commerce Clause due to its discriminatory effect, this Court REVERSES the trial court's order granting summary judgment and order awarding costs and REMANDS to the trial court to determine the refund amount.

SWANSON, J., CONCURS; MARSTILLER, J., DISSENTS with opinion.

MARSTILLER, J., dissenting.

For the following reasons, I respectfully dissent from the majority decision and would affirm the summary final judgment ruling that the CST does not violate the dormant Commerce Clause.

I do not agree the satellite and cable providers are similarly situated entities for purposes of dormant Commerce Clause analysis; in my view, the majority opinion fails to fully consider all the differences between the two.[3] Mainly, however, I disagree with the majority's characterizing the cable providers' use of local infrastructure, reliance on local rights-of-way and employment of Florida workers as in-state economic interests giving rise to the proscriptions of the dormant Commerce Clause. As the trial court found based on the undisputed facts brought out below, "[t]he cable companies may have more of a presence in the state because of the nature of the technology they utilize in providing their services, but the satellite companies have a significant presence in the state as well." Indeed, DirecTV and Echostar filed verified statements below averring that each has employees based in Florida—DirecTV has independent contractors here, as well—who are responsible for "sale of its services and installation, servicing, and/or maintenance of its property." I do not believe we can properly ignore or discount these facts. Inasmuch as the cable providers and the satellite providers

_____

[3] *See infra* n.3.

22

both have human and physical assets in Florida *which they use to provide services to their customers,* they both have significant in-state economic interests. I fail to see how, under these facts, the cable providers have local economic interests, but the satellite providers do not. And I find nothing in dormant Commerce Clause jurisprudence that would justify invalidating Florida's CST based on one group's comparatively greater economic investment in the state where *both groups* have economic investment here.[4]

---

[4] *But cf. DirecTV, Inc. v. Roberts*, No. M2013-01673-COA-R3-CV, slip op. (Tenn. Ct. App. Feb. 27, 2015), and *DirecTV, LLC v. Dep't of Revenue*, 25 N.E.3d 259 (Mass. 2015). The Tennessee court in *Roberts*¸ although ultimately finding the state sales tax law challenged by satellite TV providers not in violation of the dormant Commerce Clause, see *infra*. n.3, found the law impermissibly discriminated based on the extent of "use of infrastructure," citing *Bacchus Imports Ltd. v. Dias*, 468 U.S. 263 (1984). *DirecTV v. Roberts*, slip op. at 11. But *Bacchus* did not involve comparative local "use of infrastructure" or local "investment" by otherwise non-state-based companies. Rather *Bacchus* involved a clear-cut case of economic protectionism for a home-grown liquor industry against out-of-state producers. Thus, in my view, *Bacchus* provides no jurisprudential support for the approach taken by either the Tennessee court or the majority in this case. Notably, the Tennessee court recognized:

> [N]egative Commerce Clause precedent does not explain [ ] how state legislatures are to weigh variances in investment in order to avoid favoritism. . . . Case law does not explain what differential, either in value or type, of local investment will render different treatment of competing companies discriminatory for purposes of the negative Commerce Clause.

*Roberts*, slip op. at 12. I submit the reason such explanation has not been forthcoming is because the dormant Commerce Clause does not apply where the taxpayers involved all have *some* in-state investment. The Massachusetts court in

23

The majority opinion analogizes the situation here to *Delta Air Lines*, but that case is, in fact, inapposite. There, the state law at issue "provide[d] a credit against the corporate income tax for air common carriers who have a corporate or business home office in Florida and also maintain a work force of more than 1200 employees in the state." 455 So. 2d at 319. The credit would offset up to half of an air carrier's fuel tax bill. *Id.* The Florida Supreme Court held the tax credit discriminated against interstate commerce by giving commercial advantage "to Florida-based air common carriers over non-Florida-based carriers." *Id*. at 320. The distinction drawn in *Delta Air Lines* does not exist in the case before us because none of the companies are Florida based. None have corporate headquarters or business home offices here. And the fact that the cable providers, because of the technology they use, have more infrastructure and assets in Florida than do the satellite providers does not make this a case of Florida-based interests

*Revenue* simply assumed, without explanation, that the cable providers and satellite providers represent in-state and out-of-state interests, respectively, and cited *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 42 n.9 (1980), for support. *DirecTV v. Dep't of Revenue*, 25 N.E.3d at 654-55, 655 n.12. However, *Lewis*, like *Bacchus*, did not deal with comparative local investment by two groups of industry participants. Rather, the state law at issue in *Lewis* prohibited banks, bank holding companies and trust companies with principal operations outside the state from establishing local operations. *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. at 42. Thus, there too, economic protectionism of local business was the impermissible objective of the statute; it was not a case of the state choosing to favor two industry groups, both with some quantum of local investment, as we have here.

versus non-Florida-based interests.

I also believe the majority opinion, in focusing solely on the extent of in-state economic investment by cable providers and disregarding in-state investment by satellite providers, misapprehends the purpose of the dormant Commerce Clause. Relying primarily on the fact that the cable providers use local rights-of-way, the majority opinion discounts the decisions of the Sixth Circuit Court of Appeals, the Ohio Supreme Court and the North Carolina Court of Appeals holding that the pertinent distinction between satellite providers and cable providers is operational and not geographical. But those courts correctly recognized that the type of economic protectionism the dormant Commerce Clause prohibits is not present in this situation where the state is not protecting local industry. "[C]able companies are no more 'local' in nature than are satellite companies." *DirecTV, Inc. v. State*, 632 S.E.2d at 548. Moreover, application of the CST "does not depend on the geographic location of the programming provider. Rather, the sale of satellite broadcasting services is subject to [the higher] tax regardless of whether the provider is an in-state or out-of-state business[.]" *DirecTV v. Levin*, 941 N.E.2d at 1195. In other words, if any of the satellite TV providers were to headquarter itself in Florida, the CST would operate no differently as to that provider. As such, the CST does not offend the policy advanced by the dormant Commerce Clause, and the summary final judgment

25

should be affirmed.[5]

Assuming *arguendo* the CST does discriminate against out-of-state interests,

_____

[5] *But cf. DirecTV, Inc. v. Roberts* and *DirecTV, LLC v. Dep't of Revenue*, *supra* n.2, the two most recent decisions (as of this writing) in the apparently growing line of these cases. Although the Tennessee and Massachusetts courts found their states' taxing schemes discriminated against out-of-state interests, they nevertheless upheld the statutes against the satellite providers' dormant Commerce Clause challenge because the satellite providers and cable providers are not substantially similar entities as a threshold matter. *See Roberts*, slip op. at 17; *Revenue*, N.E.3d at 266-68; *see also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) ("Any notion of discrimination assumes a comparison of substantially similar entities.); *Colgate-Palmolive Co. v. Fla. Dep't of Revenue*, 988 So. 2d 1212, 1216 (Fla. 1st DCA 2008) ("In considering whether facial discrimination exists in a taxing scheme, courts must look to the treatment applied to similarly situated taxpayers.") (citing *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.*, 505 U.S. 71, 81 n.12 (1992)).

> The difference in [federal] regulatory treatment between satellite and cable and the resulting benefits inuring to cable customers mean that satellite providers and cable providers are not substantially similar entities for purposes of the Commerce Clause. . . . [T]he bundle of services offered by cable providers differs substantially from the bundle of services provided by satellite providers. Cable providers must offer several public service items, including local broadcast stations, educational stations, emergency information, and certain signal quality. Satellite providers are almost entirely free from these obligations. While the services cable providers *must* offer under federal law may not be widely known to or necessarily coveted by consumers, federal law nonetheless distinguishes the services and cable providers and satellite providers. Therefore the disparate tax treatment of satellite providers and cable providers does not constitute discrimination.

*Roberts*, slip op. at 17.

as asserted by the satellite providers, to the extent there *is* a set of circumstances, as just stated, under which the statute clearly would not have such discriminatory effect, the facial challenge to the statute fails. "A facial challenge to a legislative act is . . . the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exists under which [the tax] would be valid." *State*, 632 S.E.2d at 547 (quotations and citations omitted). The satellite providers have not satisfied their very high burden in this constitutional challenge, and the summary final judgment can be upheld on this basis, as well.

The bottom line is that the dormant Commerce Clause does not protect satellite TV providers from differential tax treatment simply because their technology is not land based. It does not protect "the particular structure or methods of operation in a retail market." *Exxon Corp.*, 437 U.S. at 127. The majority's decision to invalidate Florida's CST is inconsistent with this principle and contrary to dormant Commerce Clause jurisprudence. I understand the concern over a taxing scheme that appears to favor one group of industry competitors over another. But "'applying the dormant Commerce Clause in cases that do not present the equivalent of a protective tariff'—i.e., where the tax does not draw geographic lines, favor local products, or promote local companies—[ ] 'dramatically increase[s] the clause's scope.'" *Levin*, 941 N.E.2d at 1194 (quoting *Treesh*, 487 F.3d at 481). The majority's decision takes that dramatic step, and I

am not prepared to follow.

For the foregoing reasons, I respectfully dissent from the decision to invalidate the CST. I note, however, "a facially discriminatory tax may still survive Commerce Clause scrutiny if it is a truly 'compensatory tax' designed simply to make interstate commerce bear a burden already borne by intrastate commerce.'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996) (quoting *Associated Industries of Mo. v. Lohman*, 511 U.S. 641, 647 (1994)). Having concluded the CST facially discriminates against interstate commerce, the majority should not stop there, but should remand the cause for further consideration by the trial court.